**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOYCE M. HAWTHORNE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 09-CV-442-TCK-PJC |
| | ) |
| VATTEROTT EDUCATIONAL | ) |
| CENTERS, INC., | ) |
| | ) |
|       Defendants. | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss (Doc. 12).

**I.    Factual Background**

In her Complaint, Plaintiff Joyce Hawthorne alleges the following facts that are common to all seven of her claims for relief. Plaintiff is an African-American female who began employment with Defendant Vatterott Educational Centers, Inc. around March 2004 as a Medical Office Assistant Instructor. In February 2006, she was promoted to Program Director but "did not receive an increase in pay and was earning less than similarly situated Caucasian male program directors" ("Discriminatory Payments") (Compl. ¶ 13). In 2007, Plaintiff was told she needed to earn her associate's degree in order to maintain her position as Program Director, and Plaintiff enrolled in school. In January 2008, Terry Queeno ("Queeno"), the campus director, told Plaintiff she could maintain her position as Program Director as long as she was working on her degree. In January 2008, Plaintiff applied for the position of Retention Officer, but Queeno told Plaintiff she needed a master's degree for such position ("1/08 Failure to Promote").[1] A white female who did not have

---

[1] The Court uses the term "promote" because, for purposes of this motion, the Court is construing the record in a light most favorable to Plaintiff. *See supra* Part II. The Court is not finding, as a factual matter, that a move to Retention Officer would have been a promotion from

a master's degree was subsequently hired for this position. In March 2008, Plaintiff was informed that she was no longer a Program Director, and "she was stripped of her title" as Program Director ("3/08 Demotion"). (Am Compl. ¶ 15.) Plaintiff alleges, however, that she was "still required to perform the job functions of a Program Director, without the title and without the salary that the other Program Directors [were] earning." (*Id.*) After Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), she received an email in January 2009 from the campus director informing Plaintiff that she was not a Program Director ("1/09 Demotion").[2]

Based on the above allegations, Plaintiff asserts seven claims for relief against Defendant: (1) Title VII - race discrimination;[3] (2) Title VII - gender discrimination; (3) 42 U.S.C. § 1981 - refusal to fairly compensate Plaintiff for the position of Program Director and wrongful demotion; (4) 29 U.S.C. § 206(d) - receipt of unequal pay in comparison to male employees; (5) Title VII - retaliation; (6) Title VII - race discrimination/failure to promote; and (7) intentional infliction of emotional distress ("IIED"). Reading the "common facts" in conjunction with the claims for relief, the first two Title VII causes of action for race and gender discrimination relate to the following alleged adverse employment actions: Discriminatory Payments; 1/08 Failure to Promote; and 3/08

---

the position Plaintiff held in January 2008.

[2] Plaintiff's Complaint alleges two different dates that she was demoted from the Program Director position. Plaintiff now argues in briefs that the actual demotion occurred in January 2009. *See infra* Part III.C.

[3] The Complaint alleges that Defendant discriminated based on race "by terminating the plaintiff." (Compl. ¶ 20.) This is inconsistent with Plaintiff's factual allegations and appears to be in error. This error was identified in Defendant's Motion to Dismiss, in which Defendant stated that Plaintiff was still employed by Defendant. Plaintiff's response was silent as to this specific question but indicates that Plaintiff was still employed by Defendant when the Complaint was filed. Thus, the Complaint's reference to Plaintiff's termination appears to be in error.

Demotion. The third cause of action relates to: Discriminatory Payments; and 3/08 Demotion. The fourth cause of action relates to the Discriminatory Payments but arises under the Unequal Pay Act rather than Title VII. The fifth cause of action relates to the 1/09 Demotion. The sixth cause of action relates to the 1/08 Failure to Promote and is redundant with the first cause of action. The seventh cause of action relates to Plaintiff's overall treatment during her employment with Defendant.

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Defendant moved to dismiss all claims except the Unequal Pay Act claim and the IIED claim, arguing that all other claims are barred because Plaintiff failed to file an administrative charge with the EEOC within 300 days of suffering the relevant adverse employment action.[4] In support of its motion to dismiss, Defendant attached two charges of discrimination filed by Plaintiff with the EEOC, which are dated December 10, 2008 and April 29, 2009. (*See* Doc. 16, Ex. A ("12/10/08 Charge"), Ex. B ("4/29/09 Charge").) In support of its objection to the motion to dismiss, Plaintiff attached five exhibits, including: (1) an EEOC Intake Questionnaire received by the EEOC on October 16, 2008 ("10/16/08 Questionnaire");[5] (2) an email dated January 6, 2009; (3) an email dated January 22, 2009; (4) the 4/29/09 Charge; and (5) a letter dated July 9, 2008.

---

[4] A plaintiff's failure to *timely* file an EEOC charge is an affirmative defense rather than a jurisdictional bar. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1168 (10th Cir. 2008); *Jones v. Unified Gov't of Wyandotte Cnty.*, 552 F. Supp. 2d 1258, 1266 n.19 (D. Kan. 2008) ("Under Tenth Circuit law, the *filing* of an EEOC charge is jurisdictional but the *timeliness* of such charge is similar to a statute of limitations, which is subject to waiver, estoppel and equitable tolling.") (emphasis added). As such, it is subject to analysis under Rule 12(b)(6) or Rule 56, rather than Rule 12(b)(1).

[5] The 10/16/08 Questionnaire was signed by Plaintiff on October 6, 2008 and contains an EEOC receipt stamp of October 16, 2008.

"[A] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) cannot be converted into a summary judgment motion without notice and an opportunity for the parties to present relevant evidence." *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).  However, "[t]he required notice may be actual or constructive, and in some circumstances, courts have concluded that the submission of evidentiary materials by the movant, the nonmovant, or both of them constitutes sufficient notice." *See id.* (citing *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986) ("[F]ailure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response.")). Based on both parties' submission of evidence outside the pleadings and the constructive notice occasioned thereby, the Court converts Defendant's Rule 12(b)(6) motion to a Rule 56 motion. *See Aadil v. Shurtleff*, No. 07-CV-34, 2008 WL 906760, at *4 (D. Utah Apr. 1, 2008) (converting motion to dismiss to one for summary judgment based on constructive notice where both parties "submitted copies of the EEOC charges with their briefs" and neither objected to the court's consideration thereof).[6]

## II.     Rule 56 Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a

---

[6] The parties are not precluded from filing further summary judgment motions in accordance with the scheduling order.

genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### III.   Discussion

In order to be timely, a "charge" of discrimination must ordinarily be filed with the EEOC within 180 days of the challenged employment action. 42 U.S.C. § 2000e-5(e)(1); *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1196 (10th Cir. 2003). However, the statute provides for an extended 300-day filing period "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief." 42 U.S.C. § 2000e-5(e)(1); *W.H. Braum, Inc.*, 347 F.3d at 1196. States that have such agencies, *i.e.*, agencies that are empowered to investigate employment discrimination, are referred to as "deferral states." *See W.H. Braum, Inc.*, 347 F.3d at 1196 n.2; *Procter v. United Parcel Serv.*, 502 F.3d 1200, 1206 n.3 (10th Cir. 2007) (explaining that a plaintiff had "300 days, rather than 180 days, under the statute because Kansas is a 'deferral state,' that is, a state with an agency empowered to investigate employment discrimination"); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003) ("In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice."). Oklahoma is a deferral state. *See W.H. Braum, Inc.*, 347 F.3d at 1196 n.2; *see also* Okla. Stat. tit. 25, § 1502. Therefore, the extended 300-day filing period applies.

A defendant bears the "burden to show that [a] plaintiff failed to timely comply with administrative prerequisites." *Johnson v. Glickman*, 155 F. Supp. 2d 1245, 1246 (D. Kan. 2001).

"In the context of suits based on discrete [discriminatory] acts, a court may easily determine whether the plaintiff filed a claim within the limitations period." *Tademy*, 520 F.3d at 1156. This is because "discrete acts occur on the day that they happen." *Id.* (internal alterations and quotation omitted).[7]

### A.   Charges of Discrimination

In this case, the Court's analysis requires determining what documents in the record constitute "charges" of discrimination and then determining whether the relevant allegations included in such charges were raised within 300 days of their occurrence. *See generally Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 712 (10th Cir. 2008). Plaintiff contends that there are three relevant "charges" in this case: (1) the 10/16/08 Questionnaire; (2) the 12/10/08 Charge; and (3) the 4/29/09 Charge. Defendant disputes whether the 10/16/08 Questionnaire may be considered a "charge."

An EEOC intake questionnaire can, under certain circumstances, constitute a "charge" of discrimination as that term is used in 42 U.S.C. § 2000e-5(e)(1). *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (setting forth general rules for determining whether EEOC intake questionnaire or other document constitutes a "charge" for ADEA purposes); *Semsroth*, 304 Fed. Appx. at 712 (adopting *Holowecki* analysis in Title VII context). A document filed with the EEOC constitutes a "charge" if it: (1) provides the minimum amount of information required by 29 C.F.R. § 1601.12, *i.e.*, contains a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of; and (2) can be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle

---

[7] Three of the four alleged adverse employment actions under Title VII are discrete discriminatory actions occurring on one day (the 1/08 Failure to Promote, the 3/08 Demotion, and the 1/09 Demotion). The fourth alleged adverse actions, the Discriminatory Payments, are discussed in more detail below.

a dispute between the employer and employee. *Semsroth*, 304 Fed. Appx. at 712-13 (citing *Holowecki*). As to the second element of whether the document can be construed as a request to take remedial action, the Tenth Circuit clarified that: (1) this issue turns on an objective standard and not the subjective intent of the claimant; and (2) although the EEOC's conduct following the filing of the document informs the issue, a plaintiff need not present evidence that the EEOC actually treated a document as a charge. *Id.* at 713 (modifying Tenth Circuit law as it existed prior to *Holowecki*). If an intake questionnaire is deemed a charge, the subsequent filing of a formal charge "does not nullify [the] earlier, proper charge." *Holowecki*, 552 U.S. at 406 (rejecting argument that subsequent filing of a formal charge demonstrates that a complainant did not intend an earlier document to constitute a charge).

In this case, the 10/16/08 Questionnaire is fully completed, identifies the relevant parties, sets forth relevant dates of events, and contains descriptions of certain acts of discrimination and adverse employment actions. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1.) In addition, Plaintiff attached a two-page statement ("Statement") describing the alleged discrimination in greater detail. (*Id.*) The 10/16/08 Questionnaire satisfies the first element because it "contains a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Semsroth*, 304 Fed. Appx. at 713.

The second requirement – that the 10/16/08 Questionnaire can be reasonably construed as a request for the agency to take remedial action to protect the employee's rights – is also satisfied in this case. The 10/16/08 Questionnaire contains the following:

> Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so within either 180 or 300 days from the day you knew about the discrimination . . . . If you want to file a charge, you should

> check Box 1, below.  If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer . . . about your filing a charge, you may wish to check Box 2, below.
> Box 1
> __ *I want to file a charge of discrimination, and I authorize EEOC to look into the discrimination I described above.*  I understand that the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name. . . .
> Box 2
> __ I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. *I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.*

(*See* Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1, at 4 (emphasis added).)  Plaintiff checked the first box, thereby requesting and authorizing the EEOC to take remedial action to protect her rights.  This form, unlike the form at issue in *Holowecki*, forces claimants to decide whether their questionnaire is a request for the agency to take remedial action, such that courts can objectively determine whether each questionnaire is a charge of discrimination or merely a request for further information. *See Holowecki*, 552 U.S. at 407 (urging EEOC to revise forms and processes to reduce "further misunderstandings" as to whether a document is a charge of discrimination).  Were the Court to construe a questionnaire with the first box checked as something less than a charge, the questionnaire itself would be misleading.  The questionnaire warns claimants that, by checking the second box, they could lose their rights and fail to file their charge in time.  This implies that, if the first box is checked, the questionnaire is sufficient to satisfy the EEOC's timeliness requirements for any allegations contained therein.  Because Plaintiff checked the first box, the 10/16/08 Questionnaire can be reasonably construed as a request for the EEOC to take remedial action to protect Plaintiff's rights.  *See Brahmana v. Lembo*, No. C-09-106, 2010 WL 965296, at *1 (N.D. Cal. Mar. 17, 2010) (plaintiff checked box on EEOC intake questionnaire containing identical

language to that used on 10/16/08 Questionnaire) (holding that questionnaire constituted charge of discrimination under *Holowecki*'s requirements). Therefore, the 10/1/608 Questionnaire satisfies both elements and qualifies as a charge of discrimination.

        B.      <u>Timeliness of Relevant Allegations in 10/16/08 Questionnaire</u>

Because it is the earliest filed charge, the Court begins by assessing the timeliness of any allegations contained within the 10/16/08 Questionnaire.[8] The 10/16/08 Questionnaire clearly includes the following claims that are also raised in the Complaint: (1) the Discriminatory Payments, (*see* Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1 at Statement ("February 2006 I was given the Program Director title. I did not get a pay increase with this title from an Instructor to a Program Director. . . . I feel like I have been discriminated against due to the fact that I am not being paid for the Program Director position . . . There are three other Program Directors (all of which are White Males) that are in different departments but same job duties that are making more money than me.")); (2) the 1/08 Failure to Promote, *see id.* ("[T]he month of January around the 18th I heard that there was a Retention Officer position open. I went to [Queeno] . . . and ask to apply for the position [but] he told me that you had to have a Masters Degree for the position. . . . [A] white female[] was given the position . . . .")); and (3) the 3/08 Demotion, (*see id.* ("Peggy Nelson emailed [Queeno] on March 10, 2008 and said that I was to be taken out of the Program Director position because I am not qualified to do the job. But to date I am still in this position and not getting paid for it.")). The Court must now determine whether each allegation was timely asserted in the 10/16/08 Questionnaire, *i.e.*, within 300 days of its occurrence.

---

[8] If the federal claims at issue were raised in the 10/16/08 Questionnaire, there is no need to determine if they were timely raised in subsequent charges.

       1.     Discriminatory Payments

Defendant admits that, pursuant to amendments to 42 U.S.C. § 2000e-5 occasioned by the Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act"), each discriminatory paycheck constitutes a new discriminatory action for purposes of Title VII's filing requirements. 42 U.S.C. § 2000e-5(e)(3)(A) ("For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice*.") (emphasis added).[9] Defendant further admits that this law is deemed to have taken effect on May 28, 2007. *See* 42 U.S.C. § 2000e-5, Historical and Statutory Notes (explaining that relevant amendments "take effect as if enacted on May 28, 2007"). Defendant argues, however, that "the allegedly unlawful denial of a raise to Plaintiff because of her race [occurring in February 2006] occurred 452 days prior to the abrogation of *Ledbetter*." (*See* Def.'s Mot. to Dismiss 6.)

The Court rejects Defendant's argument because it misconstrues the retroactivity provision of the Ledbetter Act. The statutory notes provide: "[The Ledbetter Act,] and the amendments made by [the Ledbetter Act] . . . take effect as if enacted on May 28, 2007 *and apply to all claims of discrimination in compensation under title VII . . . that are pending on or after that date*." *See* 42

---

[9] The Ledbetter Act was prompted by the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (holding that claimant alleging discrimination based on a pay-setting decision must file a charge with the EEOC within 180 days, or 300 days, after the discriminatory decision was made).

U.S.C. § 2000e-5, Historical and Statutory Notes (emphasis added).  The Third Circuit has stated that "[t]he Act is retroactive and applies to all *cases* pending on or after May 28, 2007 – the date when the Supreme Court issued the *Ledbetter* decision."  *Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 184 (3rd Cir. 2009) (emphasis added).  Thus, the retroactivity language quoted above applies to all Title VII cases pending before a court on or after May 28, 2007.  This case was filed July 9, 2009, and Plaintiff's claim based on Discriminatory Payments was therefore "pending on or after" May 28, 2007.  Accordingly, any Discriminatory Payments that occurred on or after December 17, 2007 (300 days prior to October 16, 2008) were timely raised in the 10/16/08 Questionnaire and are within the 300-day filing requirement.

### 2. 1/08 Failure to Promote

The Court assumes, for purposes of summary judgment only, that the 1/08 Failure to Promote occurred on the last possible day shown by Plaintiff's evidence, January 24, 2008.[10]  Therefore, in order to be timely, Plaintiff must have raised the 1/08 Failure to Promote with the EEOC no later than Wednesday, November 19, 2008.  Plaintiff clearly did so in the 10/16/08 Questionnaire, and this aspect of Plaintiff's Title VII claim is timely.[11]

### 3. 3/08 Demotion

The Court assumes, for purposes of summary judgment only, that the 3/08 Demotion alleged in the Complaint occurred on the last possible day of March, which is March 30, 2008.  In order to

---

[10] The 10/16/08 Questionnaire indicates that the 1/08 Failure to Promote occurred around "1-18-8 and 1-24-08."  (Pl.'s Resp. to Mot. to Dismiss, Ex. 1 at 2.)

[11] Plaintiff's claim would not be timely if it was raised for the first time in the 12/10/08 Charge.

be timely, Plaintiff must have raised the 3/08 Demotion no later than January 24, 2009. Plaintiff clearly did so in the 10/16/08 Questionnaire, and this aspect of Plaintiff's Title VII claim is timely.[12]

### C.  Timeliness of Allegations in 4/29/09 Charge

The 1/09 Demotion is the only subject of the 4/29/09 Charge, which provides:

> On January 6, 2009, I received and [sic] email from my Supervisor, Cheryl Beese, DOE scheduling a mandatory bi-weekly Program Directors meeting starting January 12, 2009, which I attended. On or about January 22, 2009, I received another email from Cheryl Beese stating that I cannot attend any more Program Directors meeting [sic] because I am not Program Director.[13] I believe I was demoted from my position, in retaliation for filing EEOC Charge 564-2009-00179 against my employer.

(Def.'s Mot. to Dismiss, Ex. B at I.) Defendant argues that the 1/09 Demotion was not timely raised because the Complaint alleges that the discrete discriminatory action of demotion from the Program Director position first occurred in March 2008. Essentially, Defendant argues that Plaintiff can only be demoted from the Program Director position one time, either in March 2008 on the alleged basis of wrongful race and gender discrimination, or in January 2009 on the alleged basis of retaliation for filing the 12/10/08 Charge. In her brief in opposition to the Motion to Dismiss, Plaintiff contends (in seeming contradiction to the Complaint, the 10/16/08 Questionnaire, and the 12/10/08 Charge) that Plaintiff's demotion actually occurred in January 2009 and not March 2008. (Pl.'s Resp. to Mot. to Dismiss 6.) Plaintiff further argues: "[E]ven if, assuming *arguendo*, the demotion occurred in March of 2008 and not in January 2009, which the Plaintiff adamantly disputes, as stated above, it still occurred within the 300-day filing period." (*Id.*)

---

[12] Although it is less explicit, Plaintiff also timely raised the 3/08 Demotion in the 12/10/08 Charge. (*See* Def.'s Mot. to Dismiss, Ex. A at II ("I was told by Peg Nelson, Region II Academic Dean, I was not qualified, and I needed a degree to maintain my position.")).

[13] These emails are contained in the current record before the Court and at least arguably support Plaintiff's position that she was demoted sometime in January 2009.

12

For purposes of the current motion only, there exists a question of fact as to whether Plaintiff's demotion from the position of Program Director occurred in March 2008 or January 2009. Plaintiff has alleged both dates in the Complaint, both dates are encompassed within relevant EEOC charges, and there is record evidence supporting both dates. The Court cannot, as urged by Defendant, decide the precise date of Plaintiff's demotion from the Program Director position as a matter of law based on the record presented. Assuming the demotion occurred for the first time in January 2009, this adverse action was timely raised in the 4/29/09 Charge, and the Court need not engage in any further analysis. Therefore, this aspect of Plaintiff's Title VII claim is also timely.

Defendant's Motion to Dismiss (Doc. 12) is DENIED.

**IT IS SO ORDERED this 17th day of August, 2010.**

*[signature: Terence C. Kern]*

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**